# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 2003 Session Heard at Dyersburg

## JUDY C. BURROUGHS, Individually and as Surviving Spouse and Personal Representative of the Estate of Harold L. Burroughs, Deceased v. ROBERT W. MAGEE, M.D.

### Appeal from the Circuit Court for Lauderdale County
No. 5005    Joseph H. Walker, III, Judge

---

### No. W2001-00238-SC-R11-CV - Filed October 1, 2003

---

This is an action for damages for personal injury and wrongful death resulting from an automobile accident in which the plaintiff was injured and her husband was killed. The plaintiff filed suit against the driver of the other vehicle. The plaintiff later amended her complaint to assert a claim against the other driver's physician, alleging that on the day before the accident the physician negligently prescribed two medications to his patient (the other driver), medications that can impair a person's ability to drive, and that the physician failed to warn his patient of the risks of driving while under the influence of the two drugs. The trial court granted the physician's motion for summary judgment on the ground that the physician owed no duty of care to the plaintiff and her husband. The Court of Appeals affirmed in part and reversed in part; the intermediate court held that the physician owed a duty to the plaintiff and her husband to warn his patient of the risks of driving while under the influence of the prescribed drugs, but the court held that the physician owed no duty to the plaintiff or her husband in deciding whether or not to prescribe the medications to his patient. We affirm the judgment of the Court of Appeals.[1]

### Tenn. R. App. P. 11, Appeal by Permission; Judgment of the Court of Appeals Affirmed; Judgment of the Trial Court Affirmed in Part, Reversed in Part, and Remanded

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., J., joined. E. RILEY ANDERSON, J., filed a concurring and dissenting opinion. JANICE M. HOLDER, J., filed a concurring and dissenting opinion.

J. Houston Gordon, Lyle Reid, and Jason G. Whitworth, Covington, Tennessee, for the Appellant, Judy C. Burroughs.

---

[1] Oral argument was heard in this case on April 10, 2003, in Dyersburg, Dyer County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Hubert B. Jones and Gary H. Nichols, Dyersburg, Tennessee, for the Appellee, Robert W. Magee, M.D.

David L. Steed and Bryan K. Williams, Nashville, Tennessee, for the Amicus Curiae, Tennessee Medical Association.

**OPINION**

The complaint alleges that at approximately 7:00 p.m. on July 31, 1997, Roger E. Hostetler ran a stop sign and that his truck collided with a car driven by Harold L. Burroughs. Mr. Burroughs' wife, Judy C. Burroughs (the plaintiff), was a passenger in the car driven by her husband. Mr. Burroughs was severely injured in the accident and subsequently died as a result of his injuries. Mrs. Burroughs sustained serious injuries in the accident.

Mrs. Burroughs filed suit against Mr. Hostetler, alleging that he "negligently, recklessly and with gross negligence and willful and wanton disregard for the safety of others," ran a stop sign and thereby caused the accident. The complaint alleges in the alternative that Mr. Hostetler negligently failed to properly inspect and/or maintain his vehicle, specifically his brakes.

Approximately eight months after filing her complaint, Mrs. Burroughs filed an amended complaint adding a second defendant, Robert W. Magee, M.D., who treated Mr. Hostetler on the day before the accident and prescribed two medications to him, medications that can affect a person's ability to safely operate a motor vehicle.[2] In summary, the amended complaint alleges that Dr. Magee negligently prescribed the two medications to Mr. Hostetler and that Dr. Magee negligently failed to warn Hostetler of the risks of driving while under the influence of the two drugs.

The facts set out in the record indicate that on July 30, 1997 Mr. Hostetler went to the Ripley office of the Dyersburg Medical Group, where he was seen by Dr. Magee. (Mr. Hostetler had been a patient of that office since the mid-1980s. However, Dr. Magee did not join the group until 1996 and had not personally treated Mr. Hostetler prior to July 30, 1997.) Dr. Magee's office note from the July 30 visit states that Mr. Hostetler had been released from the hospital the previous week after suffering from heat exhaustion. The office note states that Mr. Hostetler presented with complaints of "persistent weakness in his upper extremities and recurrent headache." Dr. Magee's office note includes a reference to Mr. Hostetler being a truck driver.

After examining Mr. Hostetler, Dr. Magee prescribed two medications for him, Soma (a muscle relaxant) and Esgic-Plus (a barbiturate). Dr. Magee testified in his deposition that he prescribed the Soma to treat Mr. Hostetler's muscle cramps and the Esgic-Plus to treat his

---

[2] Later in the litigation, Mrs. Burroughs filed a second amended complaint. The second amended complaint added a claim for loss of consortium and increased the ad damnum stated in the complaint.

headaches.[3]  Both drugs act as depressants on the central nervous system and can affect a patient's ability to safely operate a motor vehicle.

There are sharply disputed issues of fact as to whether Dr. Magee gave any warnings to Mr. Hostetler about the possible effects of the two drugs.  Mr. Hostetler testified in his deposition that Dr. Magee gave him no warnings about the two drugs and did not advise against him driving while under the influence of the medications.  On the other hand, Dr. Magee testified in an affidavit and in his deposition that he did give appropriate warnings to Mr. Hostetler about the medications.  In his affidavit, Dr. Magee stated that he told Mr. Hostetler that taking Soma and Esgic-Plus at the same time "can cause an enhanced effect and requires him to exercise caution when taking them and [advised him] to follow the instructions I had given him not to drink, drive or operate machinery."[4]

Mr. Hostetler filled the two prescriptions at a local pharmacy.  On the day of the accident, he took one Soma and one Esgic-Plus at breakfast (at approximately 10:00 a.m.) and again took one dose of each drug at lunch (at approximately 2:00 p.m.).  Mr. Hostetler and the two people who were passengers in his pickup truck at the time of the accident each testified in their respective depositions that Hostetler had not consumed any alcohol on the day of the accident and had not taken any other drugs on that date.[5]

The investigating state trooper testified in his deposition that after the accident Mr. Hostetler was "thick tongued" in responding to questions and appeared to be "under the influence of something, whether it be alcohol or drugs or whatever."  When asked by the trooper if he was taking any medications, Mr. Hostetler responded that he was taking two prescriptions "for his back."  The trooper said that he performed a field sobriety test which showed no evidence that Mr. Hostetler was under the influence of alcohol.

Mr. Hostetler's medical chart indicated that other physicians in the group previously had prescribed Soma to Hostetler on a number of occasions, beginning in the mid-1980s and, most recently, in the spring of 1995.  Mr. Hostetler's chart also indicated that physicians at the clinic had refused to prescribe Soma for him on several occasions.  The last such occasion was on August 8, 1995.  On that date, one of Dr. Magee's colleagues stated in an office note that the patient "was demanding that I prescribe the Soma for him and I have declined to do so because I think this has

---

[3] Dr. Magee's office note in Mr. Hostetler's chart makes no mention of Mr. Hostetler complaining of muscle cramps, nor does it mention that Dr. Magee gave Hostetler a prescription for Soma.

[4] Dr. Magee's office note contains no reference to any warnings given by Dr. Magee.  Dr. Magee testified, however, that he gave the warnings and that the chart was "incomplete."

[5] One pill of chlordiazepoxide was found on the floor of Mr. Hostetler's pickup truck.  In addition, a witness reported seeing Hostetler exit his truck after the accident and drop a bag on the ground; a bag containing 1.5 grams of marijuana was found approximately nineteen feet from Hostetler's truck.  Also, several cans of beer and a bottle of tequila were found in the truck; Hostetler's passengers, however, testified that the beer and tequila belonged to them and that Hostetler had not been drinking either alcoholic beverage.

reached the stage of substance abuse and I don't feel that I should prescribe this medication for him to continue taking while driving a rig on the highways across the country."

In his deposition, Dr. Magee testified that he did not review the earlier notes indicating that Hostetler had been refused Soma prescriptions on several occasions. In particular, Dr. Magee did not review the note from the office visit on August 8, 1995. He conceded, however, that the note from August 8, 1995 was the second page of Mr. Hostetler's chart and that if he had merely turned the first page he would have seen the note. Dr. Magee testified that the earlier notes would not have affected his treatment decision; he stated that he would have prescribed Soma and Esgic-Plus to Mr. Hostetler even if he had read the earlier notes regarding the refused prescriptions.

The plaintiff alleges that Dr. Magee was negligent in failing to adequately review Mr. Hostetler's medical history contained in the medical chart. Mrs. Burroughs alleges that "it was obvious that Roger Ellis Hostetler was a truck driver with a known past history of abuse of prescribed medication, Soma, an addictive and potentially dangerous muscle relaxer" and that Dr. Magee therefore was negligent in prescribing Soma to Mr. Hostetler. Mrs. Burroughs also alleges that Dr. Magee negligently failed to warn Mr. Hostetler against driving while under the influence of the two drugs.[6]

Dr. Magee filed a motion for summary judgment asserting that Dr. Magee did not owe a duty of care to the plaintiff or her husband. In addition, Dr. Magee asserted that his prescription of Soma and Esgic-Plus to Hostetler was not a cause of or a contributing factor to the accident. The trial court granted Dr. Magee's motion, finding that Dr. Magee owed no duty of care to the plaintiff and her husband. (The trial court's order did not address Dr. Magee's causation argument.) The plaintiff appealed the trial court's granting of the motion for summary judgment.[7]

The Court of Appeals affirmed in part and reversed in part. The intermediate appellate court held that Dr. Magee owed a duty of care to the plaintiff and her husband to warn Mr. Hostetler of the risks of driving while under the influence of the prescribed drugs. The Court of Appeals, however, held that Dr. Magee owed no duty of care to the plaintiff and her husband in making prescription decisions regarding Mr. Hostetler's treatment.

We granted the plaintiff's application for permission to appeal pursuant to Rule 11, Tenn. R. App. P. For the reasons stated below, we affirm the judgment of the Court of Appeals.

---

[6] The plaintiff's expert witness, William M. Rodney, M.D., Professor and Chair of Family Medicine at Meharry Medical College, stated in affidavits and in his deposition that Dr. Magee negligently prescribed the two medications to Hostetler. In summary, Dr. Rodney said that: (1) Dr. Magee should not have prescribed Soma based upon Hostetler's medical history, and (2) that the standard of care required Dr. Magee to warn Hostetler about the possible effects of the prescribed drugs.

[7] The plaintiff's claim against Mr. Hostetler had previously been settled. As a result, the appeal of the summary judgment in favor of Dr. Magee was an appeal as of right pursuant to Rule 3, Tenn. R. App. P.

## STANDARD OF REVIEW

The existence or nonexistence of a duty owed to the plaintiff by the defendant is a question of law to be determined by the court. Staples v. CBL & Associates, Inc., 15 S.W.3d 83, 89 (Tenn. 2000); Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998); Bradshaw v. Daniel, 854 S.W.2d 865, 869-70 (Tenn. 1993); Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 858 (Tenn. 1985). Our review of this question of law is de novo upon the record, viewing the evidence in the light most favorable to the non-moving party (the plaintiff), allowing all reasonable inferences and discarding all countervailing evidence. Bradshaw, 854 S.W.2d at 870.

## SUMMARY OF PARTIES' ARGUMENTS

Under Tennessee law, the plaintiff in a negligence action must prove each of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct of the defendant that fell below the applicable standard of care, amounting to a breach of the duty owed to the plaintiff; (3) an injury or loss sustained by the plaintiff; (4) causation in fact; and (5) proximate, or legal, causation. Staples, 15 S.W.3d at 89; White v. Lawrence, 975 S.W.2d 525, 529 (Tenn. 1998). The focus in this case is on the first element, the duty of care.

The plaintiff, Mrs. Burroughs, is advancing two separate arguments as to why the defendant owed her and her husband a duty of care. First, Mrs. Burroughs asserts that Dr. Magee had a duty to his patient (Mr. Hostetler) and to the motoring public (which included the Burroughses) to warn the patient of the risks of driving while under the influence of the two prescribed drugs, Soma and Esgic-Plus. Mrs. Burroughs contends that Dr. Magee failed to warn Mr. Hostetler of those risks and thereby breached the duty of care he (Dr. Magee) owed to Mr. and Mrs. Burroughs. Second, Mrs. Burroughs argues that Dr. Magee had a duty to the motoring public (which included the Burroughses) to use reasonable care in deciding whether or not to prescribe medication that can affect the patient's ability to safely operate a motor vehicle. Mrs. Burroughs asserts that Dr. Magee violated that duty of care by inappropriately prescribing Soma and Esgic-Plus to Mr. Hostetler. Mrs. Burroughs alleges that Dr. Magee knew or reasonably should have known that another physician in the group had concluded that Mr. Hostetler's previous use of Soma had reached the point of substance abuse and that Mr. Hostetler had been "driving a rig on the highways across the country" while taking Soma. Mrs. Burroughs asserts that Dr. Magee therefore was negligent in inappropriately prescribing the two drugs to Mr. Hostetler on the day before the fatal accident.

Dr. Magee argues in response that the plaintiff failed to present any evidence that the medication prescribed by Dr. Magee was in Mr. Hostetler's system at the time of the accident. Dr. Magee therefore asserts that the plaintiff has failed to establish an essential element of her negligence claim (causation) and that he is entitled to a summary judgment.[8] Dr. Magee also asserts that he did

---

[8] The trial court's order granting summary judgment to Dr. Magee is limited to the finding that Dr. Magee
(continued...)

not owe a duty of care to Mrs. Burroughs and her husband under either of the theories advanced by the plaintiff.

The Court granted permission for the Tennessee Medical Association ("TMA") to file a brief as amicus curiae. The TMA's brief argues that the trial court correctly found that Dr. Magee owed no duty to the plaintiff and her husband. The TMA asserts that extending a physician's duty of care to non-patient third parties would be contrary to public policy and that such an extension would result in "unlimited potential liability" of physicians.

## DUTY PRINCIPLES UNDER TENNESSEE LAW

All persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others. See Doe v. Linder Constr. Co., Inc., 845 S.W.2d 173, 178 (Tenn. 1992). Thus, it has been said that duty is the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. Staples, 15 S.W.3d at 89; McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). In assessing whether a duty is owed in a particular case, courts apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable. Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall, 913 S.W.2d at 153. A number of factors are considered in making this determination, including:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of the alternative conduct.

Id.; see also Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998).

Additionally, considerations of public policy are crucial in determining whether a duty of care existed in a particular case. Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997); Bradshaw, 854 S.W.2d at 870. As we stated in Bradshaw:

---

[8](...continued)
owed no duty of care to Mrs. Burroughs and her husband. The trial court's order does not address Dr. Magee's causation argument; in fact, the trial court stated in a footnote that "causation . . . would be contested [at trial]." Likewise, the Court of Appeals did not address the causation issue. Based upon our review of the record, we find that there are disputed issues of fact as to the element of causation, and we therefore reject Dr. Magee's argument that he is entitled to a summary judgment based solely on causation grounds.

> the imposition of a legal duty reflects society's contemporary policies
> and social requirements concerning the right of individuals and the
> general public to be protected from another's act or conduct.  Indeed,
> it has been stated that "'duty' is not sacrosanct in itself, but is only an
> expression of the sum total of those considerations of policy which
> lead the law to say that the plaintiff is entitled to protection."

Id., (quoting W. Keeton, Prosser and Keeton on the Law of Torts § 53 at 358 (5th ed. 1984) (internal citations omitted)).

Applying the foregoing principles in a number of cases relating to health care, the Court has held that a physician (or, in one case, a hospital) may owe a duty of care to a non-patient third party if the physician's (or hospital's) negligence causes reasonably foreseeable injuries to the third party. Estate of Amos v. Vanderbilt University, 62 S.W.2d 133, 138 (Tenn. 2001) (holding that hospital owed duty of care to former patient and to the general public to warn former patient of her possible exposure to human immunodeficiency virus); Turner, 957 S.W.2d at 820 (holding that psychiatrist owed duty of care to a hospital nurse to protect her from violent and intentional acts of a hospitalized, mentally ill patient); Bradshaw, 854 S.W.2d at 873-74 (holding that physician of patient suffering from Rocky Mountain Spotted Fever owed a duty of care to warn patient's wife of her risk of contracting the disease); Wharton Trans. Corp. v. Bridges, 606 S.W.2d 521, 527 (Tenn. 1980) (holding that physician performing mandatory pre-employment physical examination of prospective truck driver owed duty of care to motoring public).  Compare Bain, 936 S.W.2d at 626 (holding that physician and hospital did not owe duty to warn hospital patient of his hospital roommate's HIV-positive status and that patient could not recover damages for emotional distress absent actual exposure to HIV); Pittman v. Upjohn Co., 890 S.W.2d 425, 433-34 (Tenn. 1994) (holding that physician's duty to warn regarding dangers of prescribed drug did not extend to patient's adult grandson under the facts of the case).  In the foregoing cases, the Court analyzed the existence or non-existence of a physician's duty to a non-patient third party by applying the same general principles (discussed above) that are applied in analyzing duty issues in all types of negligence cases.

In Amos, the plaintiff's deceased wife ("the patient") underwent jaw surgery in August 1984. Without her knowledge, the patient received four units of blood during the surgery.  As a result of the blood transfusion, the patient became infected with the human immunodeficiency virus (HIV). At the time of her surgery, blood banks did not test blood for the presence of HIV, and Vanderbilt had no policy requiring that patients be notified when they received blood transfusions during surgery.  In 1985, the hospital began screening blood for HIV, and in 1987 the hospital began offering free HIV testing to patients who had received blood transfusions at its facility.  However, the hospital did not undertake to notify all prior patients who had received blood transfusions that they could have been exposed to HIV.

In 1989, the patient married, and later that year she gave birth to a daughter.  The daughter became infected with HIV in utero and died approximately two months after her birth.  When the daughter was diagnosed with AIDS, the patient was tested for HIV, and her results were positive.

Until that time, the patient was unaware that she was infected with the virus. A subsequent review of her medical records disclosed that she had received the blood transfusion in 1984.

The patient and her husband sued the hospital for the wrongful death of their daughter and for negligence and negligent infliction of emotional distress. The patient died during the litigation, and her claims were then continued by her husband. The jury awarded substantial damages to the patient's estate and also awarded substantial damages to the husband. On appeal, however, the Court of Appeals reversed the award to the husband and drastically reduced the award to the patient's estate. We reversed the intermediate court's judgment. In pertinent part, this Court held that the patient's husband was within the "zone of danger" and thus was a foreseeable victim. We noted that "'[t]he imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals *and the general public* to be protected from another's act or conduct.'" Amos, 62 S.W.3d at 138 (quoting Bradshaw, 854 S.W.2d at 870 ) (emphasis added). Under the facts presented in Amos, we concluded that the hospital owed a duty of care not only to the patient but also to the plaintiff-husband, who was a member of the general public at the time of the defendant's negligent conduct, because it was foreseeable that the patient would marry and thereby unknowingly expose her husband (and their child) to HIV.[9]

Another of our health care-related duty cases is particularly instructive as to the pending case. In Wharton Transport Corp. v. Bridges, we considered the question of whether a physician who performed mandatory, pre-employment physcial examinations of prospective truck drivers owed a duty that extended to members of a family who were injured by a truck driver whom the physician had negligently certified as physically qualified to drive. Answering that question in the affirmative, we rejected the notion that imposing such a duty would expose the physician to "liability to an unlimited class of persons, for an unlimited amount of damages and for an unlimited time." Wharton Transport, 606 S.W.2d at 528. Based on the facts of that case, we found that the physician knew the "failure to properly conduct the examination would increase the risk of harm *to members of the motoring public.*" Id. at 527 (emphasis added). We went on to state that "[w]e are not attempting to make the physician an insurer of highway safety, but his duty to properly conduct the physical examination extends beyond his contractual responsibilities to the driver and the trucking company." Id.

With the foregoing principles in mind, we turn to consider the plaintiff's two arguments concerning Dr. Magee's alleged duty to Mrs. Burroughs and her husband. We begin with the question of whether a physician has a duty to warn his or her patient of possible side effects of medication that could affect the patient's ability to safely operate a motor vehicle.

### DUTY TO WARN PATIENT OF MEDICATION'S SIDE EFFECTS

---

[9] At the time of the defendant-hospital's negligence, the husband was not married to the patient. However, by failing to warn the patient of her possible exposure to HIV, the defendant thereby endangered any person to whom the patient could unknowingly transmit HIV (e.g., her future husband and child).

Mrs. Burroughs alleges that Dr. Magee owed a duty to both Mr. Hostetler and the motoring public to warn Hostetler of the risks of driving while under the influence of the two prescribed drugs. We reiterate that there are disputed issues of fact as to whether Dr. Magee gave such a warning to Mr. Hostetler and that this factual issue is for the jury to determine. However, under the standard of review that applies to this appeal, see Bradshaw, 854 S.W.2d at 870, we assume for purposes of our analysis of the duty issue that Dr. Magee did not give such a warning.

In order to determine whether Dr. Magee owed such a duty, we must apply the various factors set out in McCall to the facts of this case. The first of those factors is the "foreseeable probability of the harm or injury occurring[.]" Dr. Magee and the TMA argue that under our decision in Pittman there was not a reasonably foreseeable probability that harm would result from Dr. Magee's alleged failure to warn Hostetler of the risks of driving under the influence of Soma and Esgic-Plus.

In Pittman, the patient's adult grandson, who was visiting the patient's home, took some of the patient's diabetes medication, apparently believing the pills were aspirin. Within hours, the grandson experienced a severe reaction and ultimately was diagnosed as having severe hypoglycemia. The grandson sustained permanent brain damage and was hospitalized in an extended care facility. Pittman, 890 S.W.2d at 427. The plaintiffs (the parents of the grandson) filed suit against, among others, the patient's prescribing physician, alleging that he breached his duty to warn of the dangerous propensities of the medication.

We stated in Pittman that "[t]he law imposes upon all persons the duty to use reasonable care under the circumstances. Physicians are not exempt from this duty to non-patients even though the act or omission was committed while engaged in the practice of medicine. Of course, a duty of care is dependent upon foreseeability[.]" Id. at 431. However, after reviewing the facts of the case, we concluded that the plaintiffs "failed to 'show that the injury was a reasonably foreseeable probability, not just a remote possibility. . . .'" Id. at 433 (quoting Doe v. Linder Constr. Co., 845 S.W.2d at 178).

We disagree with Dr. Magee and the TMA that Pittman requires a finding that Dr. Magee did not owe the Burroughses a duty to warn Hostetler of the risks of driving under the influence of Soma and Esgic-Plus. Due to the manner in which the patient's grandson was injured, the injury at issue in Pittman was not reasonably foreseeable. However, arguing that there was no foreseeable probability of an injury in the pending case is the tort-law equivalent of an "ostrich burying its head in the sand."[10] Hostetler's medical chart strikingly answers the question of whether there was a foreseeable probability of harm in this case.

---

[10] We use this myth about ostriches for illustration. See "Ostrich: Struthio camelus – Adaptations" (stating, "In order to avoid being detected by predators, ostriches will often lay on the ground and stretch necks out along the ground. This is what has probably caused the myth that ostriches 'bury their heads.'"), Como Zoo & Conservatory, Saint Paul, Minnesota, available at http://www.ci.stpaul.mn.us/depts/parks/comopark/zoo/ostrich.html (June 16, 2003).

Dr. Magee's colleague had refused (two years earlier) to prescribe more Soma for Mr. Hostetler because the physician had concluded that Mr. Hostetler was abusing the drug. As the physician wrote in his office note, "I don't feel that I should prescribe this medication for him to continue taking while driving a rig on the highways across the country." That note in Mr. Hostetler's medical chart clearly indicates that Hostetler could be endangering himself and others by driving while taking Soma, and that note refutes any argument that the injury to the plaintiff and the wrongful death of her husband were not foreseeable.

The second factor we consider from McCall is "the possible magnitude of the potential harm or injury[.]" We need look no further than the all too common example of DUI-related accidents to appreciate the possible magnitude of harm or injury that can result from an impaired driver. Deaths and serious injuries tragically occur every day as the result of impaired drivers who are operating motor vehicles on our roads and highways. In addition to the devastation such accidents can wreak on individuals and families, our society also incurs substantial costs (both human and economic) as a result of impaired drivers. Given these realities, "the possible magnitude of the potential harm or injury" that can result from failing to warn a patient of the possible effects of medication on a patient's ability to drive safely is significant.

The third factor we consider is "the importance or social value of the activity engaged in by defendant[.]" A physician's delivery of medical services is of the highest importance both to individual patients and to society. Both the patient and society benefit from the availability of competent and effective medical services. In determining whether a duty exists under the facts of this case, we give considerable weight to the significant "importance and social value" of medical services and the effect that a finding of a duty might have on the delivery of those services.

The fourth factor stated in McCall is "the usefulness of the conduct to defendant[.]" We fail to see any reason why Dr. Magee's alleged conduct (*not* warning Hostetler of possible adverse effects of the drugs) was useful to Dr. Magee. There might be a de minimus benefit to Dr. Magee in not providing such warnings in that it might save him a small amount of time. Paradoxically, however, it probably is more "useful" to Dr. Magee to *give* appropriate warnings to his patient to minimize the chance of a subsequent medical malpractice action based upon an injury sustained by the patient. If the *patient* (as opposed to a third party) is injured as a result of his or her physician failing to give appropriate warnings about a drug's side effects, the patient might file suit against the physician.

The fifth factor we consider from McCall is "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of the alternative conduct." In the context of the alleged duty to warn, the "alternative, safer conduct" simply would be to warn the patient of the possible adverse effects of the prescribed drug(s) on the patient's ability to safely drive a motor vehicle. That alternative conduct is both useful (in that it could prevent harm or injury to the patient and others) and safe. Moreover, it also imposes little additional burden on the physician. As another court observed in discussing a physician's duty to warn:

-10-

It appears obvious that warning a patient not to drive because his or her driving ability might be impaired by a medication could potentially prevent significant harm to third parties. There is "little [social] utility in failing to warn patients about the effects of a drug or condition that are known to the physician but are likely to be unknown by to the patient." Praesel v. Johnson, 967 S.W.2d 391, 398 (Tex. 1998). Furthermore, a physician already owes a duty to his or her patient under existing tort law to warn the patient of such a potential adverse side effect. Thus, imposition of a duty for the benefit of third parties is not likely to require significant changes in prescribing behavior.

McKenzie v. Hawaii Permanente Med. Group, Inc., 47 P.3d 1209, 1219 (Haw. 2002).

Based upon Amos and Wharton Transport, and based upon our balancing of the factors to be considered in resolving duty issues, we hold that under the facts of this case Dr. Magee owed a duty of care to Mr. Hostetler and to the Burroughses to warn Mr. Hostetler of the possible adverse effect of the two prescribed drugs on his ability to safely operate a motor vehicle.

## DUTY TO THIRD PARTIES IN PRESCRIBING MEDICATION

We next consider the plaintiff's argument that Dr. Magee owed a duty of care to the Burroughses (as members of the motoring public) in making his decision to prescribe the two drugs to Mr. Hostetler. The plaintiff asserts that a balancing of the factors summarized above in the context of the duty to warn leads to the conclusion that Dr. Magee also owed a duty to consider the risks to third parties when prescribing the medications to Mr. Hostetler.

The plaintiff argues that the office note dated August 8, 1995 (in which Dr. Magee's colleague stated his concern that Hostetler was abusing Soma while driving a truck) establishes that there was a "foreseeable probability of the harm" that occurred in this case. As we discussed above, we agree with Mrs. Burroughs on this point. The office note written by Dr. Magee's colleague clearly refutes any argument that it was not foreseeable that Mr. Hostetler might be involved in an accident. The implicit but plain meaning of that note is that Mr. Hostetler posed a danger to himself and/or others by continuing to "driv[e] a rig on the highways across the country" while taking Soma. However, as discussed above, the answer to the question of whether the harm or injury was foreseeable is not dispositive in determining the existence of a legal duty. Both Dr. Magee and the TMA argue that policy reasons outweigh any other factors that might support a finding that a physician owes a duty to third parties in making prescription decisions.

In holding that Dr. Magee did not owe the Burroughses a duty of care in making his decision to prescribe the two drugs to Mr. Hostetler, the Court of Appeals relied upon Webb v. Jarvis, 575 N.E.2d 992 (Ind. 1991). In Webb, the defendant physician prescribed anabolic steroids to a patient. The plaintiff alleged that the steroids caused the patient to turn "into a toxic psychotic who was

unable to control his rages" and that the patient, during such a rage, shot and injured the plaintiff. The plaintiff sued the physician, alleging that he was negligent in over-prescribing anabolic steroids to the patient. The plaintiff urged the court "to find an affirmative duty on the part of a physician to administer medical treatment to a patient in such a way as to take into account possible harm to unidentifiable third persons." Id. at 995. The Indiana Supreme Court declined to find that the physician owed the non-patient plaintiff a duty of care. One basis for the Court's holding was its consideration of public policy. As the Court stated:

> A physician's first loyalty must be to his patient. Imposing a duty on a physician to predict a patient's behavioral reaction to medication and to identify possible plaintiffs would cause a divided loyalty. Were we to impose a duty on a physician to consider the risk of harm to third persons before prescribing medication to a patient, we would be forcing the physician to weigh the welfare of unknown persons against the welfare of his patient. Such an imposition is unacceptable. The physician has the duty to his patient to decide when and what medication to prescribe the patient, and to inform the patient regarding the risks and benefits of a particular drug therapy. He should fulfill that duty without fear of being exposed to liability to unknown, unidentified third persons.

Id. at 997.

The Hawaii Supreme Court expressed similar concerns in McKenzie:

> Prescribing decisions must take into account complicated issues concerning the potential benefits and risks to individual patients. Moreover, although we do not believe that doctors would altogether stop prescribing beneficial medications to their patients because of the risk of liability to third parties, an expansion of such liability would certainly discourage some prescriptions – particularly, as amicus curiae HMA points out, the prescription of psychiatric medications that necessarily have behavioral effects. The social utility of these medications is enormous, and we do not want to discourage their use. The risk of tort liability to individual patients should be enough to discourage negligent prescribing decisions. As discussed *infra,* the risk of injury to non-patient third parties can be readily addressed through the more narrow question of whether there is a duty to warn patients against driving while under the influence of the medication.
>
> Moreover, controversially but realistically, physicians and patients must consider factors such as cost, cost-effectiveness, and

-12-

availability of insurance coverage in prescribing decisions. Insurers likewise must consider treatment effectiveness and cost in determining which treatments to pay for and which medications to include on hospital and clinic formularies. . . . Health care policy decisions require a complicated array of considerations by a variety of private and public decision makers, which include physicians, other professionals, regulators, employers, patients, and other health care consumer representatives who have a stake in such decisions. We believe that these policy decisions are better left to the aforementioned stakeholders than to judges and juries, at least with respect to non-patient third parties injured in automobile accidents. Similarly, individual treatment decisions are best left to patients and their physicians. "[D]octors should not be asked to weigh notions of liability in their already complex universe of patient care." [Lester v. Hall, 970 P.2d 590, 593 (N.M. 1998)] (internal quotation marks omitted). Accordingly, considering the social utility of medications, the multitude of issues that already must be considered in prescribing decisions, the reality that existing tort law which is applicable to the individual patient should be sufficient to discourage negligent prescribing decisions, and the fact that imposing a duty to warn may readily reduce the risk to third parties, we discern no logical, sound, or compelling reasons, under the present circumstances, to introduce into the "already complex universe of patient care" the additional risk of tort liability to non-patient third parties injured in automobile accidents.

McKenzie, 47 P.3d at 1214-15.

As stated earlier, Tennessee courts, like the Indiana and Hawaii courts, must consider public policy in determining the existence or non-existence of a duty. We find the Indiana and Hawaii courts' respective discussions of public policy to be persuasive as they relate to the facts of the pending case.

The public policy considerations stated in Webb and in McKenzie are relevant to several of the factors we consider in resolving duty issues. First, "the importance or social value of the activity engaged in by defendant" is substantial. Second, the public policy considerations are relevant to the factor concerning "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of the alternative conduct." In the context of making prescription decisions for individual patients (as opposed to warning a patient of adverse affects of a prescription), "alternative, safer conduct" is not so feasible. Moreover, the "relative costs and burdens" of any such alternative conduct could be high. As the Indiana and Hawaii courts pointed out, imposing a duty on a physician to consider third

-13-

parties when making prescribing decisions could compromise the physician's care of individual patients.

Balancing the various factors we consider in determining duty issues, we hold that Dr. Magee did not owe a legal duty to the Burroughses in deciding to prescribe the two medications to Mr. Hostetler.

## CONCLUSION

In conclusion, we hold that Dr. Magee owed a duty to the plaintiff and her husband to warn Mr. Hostetler of the risks of driving while under the influence of the two prescribed drugs. However, we also hold that Dr. Magee owed no duty to the plaintiff and her husband in deciding whether or not to prescribe the medications to his patient. Our holdings and analysis in this case are limited solely to the duty of care issue, and we express no opinion as to the ultimate resolution of the other elements of negligence that must be proven by the plaintiff.

We affirm the judgment of the Court of Appeals. Consequently, the trial court's judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings. The costs on appeal are taxed equally between the parties, one-half to Judy C. Burroughs and one-half to Robert W. Magee, M.D., for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE