IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2004 Session

## CHARLES W. AYRHART, ET AL., v. DEWEL B. SCRUGGS, ET AL.

Appeal from the Circuit Court for Sumner County
No. 22110-C     C. L. Rogers, Judge

No. M2003-00453-COA-R9-CV - Filed September 21, 2004

This is an interlocutory appeal of the trial court's refusal to grant a summary judgment to the defendants in a negligence case. We find that the defendants have not affirmatively negated an element of this negligence claim and that reasonable minds could differ on the allocation of fault between the parties. Consequently, the defendant is not entitled to judgment as a matter of law. We therefore agree with the trial court and affirm the denial of summary judgment.

**Tenn. R. App. P. 9 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Gary A. Brewer, Paul A. Fassbender, Nashville, Tennessee, for the appellants, Dewel B. Scruggs, and Connie Scruggs.

Bruce N. Oldham, Gallatin, Tennessee, for the appellees, Charles W. Ayrhart and wife, Carrie Ayrhart.

### OPINION

This case arose from an accident that occurred on September 17, 2000, during the construction of a house being built by and for defendant Dewel Scruggs in Sumner County. Plaintiff Charles W. Ayrhart, Mr. Scruggs's brother-in-law, had been helping him with construction for about three weeks. There was a large opening in the main floor of the house for the entry to a staircase leading to the basement. The staircase had not yet been built. In the weeks prior to the day of the accident, the opening was covered by a sheet of plywood.

At about 8:30 a.m. on the day of the accident, the plywood was removed from the opening so it could be used elsewhere. Mr. Ayrhart had to walk around the unprotected opening several times that morning to get two-by-fours that were stacked around the rear of the opening. At about 12:30

p.m., Mr. Scruggs realized he had not heard any hammering or had any communication from his brother-in-law for some period of time.

He went looking for Mr. Ayrhart, and discovered him lying on the concrete basement floor, directly beneath the opening through which he had apparently fallen. Mr. Scruggs called Mr. Ayrhart's wife. When she arrived at the house, an ambulance was already there. Mr. Ayrhart was still lying on the floor, in a pool of blood. He was brought to the hospital, where he remained for three weeks. After he was discharged, he underwent outpatient physical therapy.

Mr. Ayrhart sustained serious injuries as a result of his fall. Aside from a broken collarbone, thumb, and ribs, he also suffered a closed head injury which resulted in a loss of memory and a reduced ability to function. One of the results of the injuries was that Mr. Ayrhart could not remember many of the events that occurred on the morning of his fall, including the fall itself.

## I. TRIAL COURT PROCEEDINGS

On September 12, 2001, Charles Ayrhart and his wife Carrie filed a Complaint in the Sumner County Circuit Court, naming Dewel Scruggs and his wife Connie (the two wives are sisters) as defendants. They claimed that the defendants were negligent for failing to adequately warn Mr. Ayrhart about the dangerous condition and by failing to remedy the condition by covering the opening. They asked for a judgment against the defendants "in an amount not to exceed $1,000,000 . . . ."

The defendants filed an Answer to the Complaint and a Motion for Summary Judgment. They admitted that Mr. Ayrhart had fallen and injured himself, but contended that the proximate cause of his injury was Mr. Ayrhart's own negligence in failing to avoid an open and obvious hazard. In their Answer, the defendants declared that they relied in the alternative upon the doctrine of comparative negligence. In their Motion for Summary Judgment, the plaintiffs asserted that, as a matter of law, Mr. Ayrhart's fault was greater than their own, and that the plaintiffs were therefore barred from any recovery. *See McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992).

The parties submitted numerous documents in support of, and in opposition to, the Motion for Summary Judgment. These included five affidavits, two depositions, two memoranda of law, a Statement of Undisputed Facts, and a Response to that Statement. *See* Tenn. R. Civ. P. 56.03. The parties differed somewhat in their accounts of the events on the day of the accident.

On December 2, 2002, the court conducted a hearing on the Motion. After the hearing, the court ruled as follows.

> Based upon the pleadings, statements of disputed facts, discovery and affidavits, said motion is denied. The Plaintiff is found to have had notice of the dangerous condition, however the Defendants did not address the Defendants' duty to engage

in alternative conduct in light of the risk of harm.  Coln v. City of Savannah, 966 S.W.2d 34 (Tennessee 1988).

The trial court and this court granted interlocutory appeal.  *See* Tenn. R. App. P. 9.

## II. SUMMARY JUDGMENT

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal.  *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).  This court's role in reviewing the grant of summary judgment is to review the record and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met.  *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn.1998)*.*

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000).  Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

A court must determine first whether factual disputes exist and, if so, whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial.  *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).  A court must review the evidence presented at the summary judgment stage in the light most favorable to the nonmoving party, afford all reasonable inferences to that party, and discard all countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993); *Byrd*, 847 S.W.2d at 210-11.  "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.  Summary judgment procedure and burdens have been explained many times.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense.  If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail.  If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Staples*, 15 S.W.3d at 88-89 (citations omitted). Thus, if, but only if, the moving party presents evidence sufficient to justify grant of the motion if the facts remain uncontested, the nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve a factual dispute at trial. Where the moving party satisfactorily challenges the nonmoving party's ability to prove an essential element of its claim, the nonmoving party has the burden of pointing out, rehabilitating, or providing new evidence to create a factual dispute as to that element. *Staples*, 15 S.W.3d at 88-89; *Rains v. Bend of the River*, 124 S.W.3d 580, 587-88 (Tenn. Ct. App. 2003). A nonmoving party who fails to carry that burden faces summary dismissal of the challenged claim.

### III. ESSENTIAL ELEMENTS OF NEGLIGENCE CLAIM

On a motion for summary judgment filed by a defendant, the first question is whether the moving party has presented evidence that negates an essential element of the plaintiff's claim. The essential elements of any negligence claim are: a duty of care owed by the defendant to the plaintiff; conduct by the defendant that amounts to a breach of that duty; an injury or loss suffered by the plaintiff; that the defendant's breach of duty was a cause in fact of the injury or loss; and proximate, or legal, causation. *Burroughs v. Magee*, 118 S.W.3d 323, 327-28 (Tenn. 2003); *McClung v. Delta Square Partnership,* 937 S.W.2d 891, 894 (Tenn. 1996).

Mr. Scruggs raises three issues on appeal: (1) whether he owed a duty of care to Mr. Ayrhart; (2) whether the plaintiffs' allegations were sufficient to establish cause in fact; and (3) whether, as a matter of law, Mr. Ayrhart's own negligence was greater than that of the defendant. We will discuss each of these issues in turn, but first must address the evidence provided in the filings.

We begin by reiterating that, because of the plaintiff's loss of memory due to his injuries, there are large gaps in the evidence as to the exact circumstances surrounding the accident. The plaintiff did not remember the fall itself or anything that happened after it. He had only a spotty memory of the other events of that morning.

There is no dispute that Mr. Ayrhart suffered grievous injuries as a result of his fall, but the parties differ somewhat as to the events that preceded the fall. The affidavit of Mr. Scruggs states that Mr. Ayrhart helped him remove the sheet of plywood on the morning of the accident. Mr. Ayrhart testified in his deposition:

> I do not remember the plywood being there the day that I fell. I believe it had been there up until the day of the accident. I do not know who removed the plywood. I do not recall assisting Dewel Scruggs in removing the plywood.

He said that Mr. Scruggs later indicated that "him and Connie [Mrs. Scruggs] moved it." In her affidavit, Carrie Ayrhart stated that it was her understanding that Connie Scruggs had been

working on the house that morning and that Dewey and Connie Scruggs were the ones who actually removed the plywood.[1]

Whether or not Mr. Ayrhart helped move the plywood, it is undisputed that he was aware it no longer covered the opening. In his affidavit, Mr. Ayrhart testified that he knew the plywood was no longer covering the hole. He further stated that on the day of the accident he and his brother-in-law were putting up headers for the breezeway using two-by-fours that he retrieved from an area near the opening in the floor.

> I had to make several trips around the hole to get two-by-fours from around the other side of the opening. . . . I seem to recall that the hole was uncovered at that time. . . . Dewel was aware that it was necessary for me to walk very close to the hole to get the two-by-fours.

## A. THE QUESTION OF DUTY

The question of whether a defendant owed a duty of care to the plaintiff is a question of law to be determined by the court. *Burroughs*, 118 S.W.3d at 327; *Staples*, 15 S.W.3d at 89; *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998). In the law of negligence, duty is simply a legal obligation owed by a defendant to conform to a reasonable person standard of care for the protection of the plaintiff against unreasonable risks of harm. *Burroughs*, 118 S.W.3d at 328; *Staples*, 15 S.W.3d at 89; *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Duty is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) (quoting W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 53 at 358 (5th ed. 1984)).

Duty is a flexible concept and dependent upon the circumstances of the situation. The Tennessee Supreme Court has consistently held that the proper analytical framework for determining the existence or non-existence of duty is a balancing approach based on principles of fairness and justice. *Burroughs*, 118 S.W.3d at 329; *Staples*, 15 S.W.83 at 89; *Coln*, 966 S.W.2d at 39; *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). Because every person has a duty to act reasonably under the circumstances to protect others against unreasonable risks of harm, the purpose of the balancing is to determine whether the risk of harm to the plaintiff was unreasonable in the circumstances. "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153.[2]

---

[1] The Scruggses stated Mr. Ayrhart had warned their son that morning to stay away from the opening because he could get hurt if he went near it. Mr. Ayrhart does not remember whether he warned the child or not.

[2] Several factors are to be considered in deciding whether a risk is an unreasonable one, thereby giving rise to a duty. "Those factors include the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of

(continued...)

Over the years, general principles have been adopted to define the duty or standard of care applicable to specific situations or relationships. Of particular relevance herein, an owner of property owes a duty to exercise reasonable or ordinary care under the circumstances to prevent injury to anyone lawfully on the premises. *Eaton v. McLain,* 891 S.W.2d 587, 593-94 (Tenn. 1994). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition and to remove or warn against dangerous conditions on the premises of which the owner is aware or should be aware through the exercise of reasonable diligence. *Id.* at 593-94.

Nonetheless, the balancing approach, weighing the foreseeability and gravity of harm against the feasibility of conduct to prevent the harm, applies to the duty analysis in premises liability cases. *Staples*, 15 S.W.3d at 89; *Coln*, 966 S.W.2d at 43. In *Coln,* our Supreme Court limited or rejected the old rule that if a dangerous condition was open and obvious, no duty was placed on the defendant and recovery was barred. *Id.* at 43. In its place, the court adopted a more nuanced rule, specifically that set out in § 343A of the Restatement (Second) of Torts, which provides in part:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*.

*Coln*, 966 S.W.2d at 41 (quoting RESTATEMENT (SECOND) OF TORTS § 343A) (emphasis in original). The Court found that "the factors in § 343A" relate directly to the foreseeability question, stating "in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care." *Coln*, 966 S.W.2d at 43.

The "factors" referred to by the court must necessarily include those set out in comment (f) to § 343A. The Court had earlier quoted that comment, which elaborates on when a landowner might anticipate harm:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

---

[2](...continued)
the conduct to defendant; the feasibility or alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." *McCall,* 913 S.W.2d at 153.

*Id*. at 41. The Court also explained that the Restatement further provides that "the premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger." *Id.* at 43.

The dangerous condition created by the opening in the floor was certainly obvious, especially to someone working in the room. The trial court herein found that Mr. Ayrhart had notice of the dangerous condition.[3] However, the trial court also found that the question of the defendants' duty to engage in alternative conduct to eliminate the dangerous condition had not been addressed by the defendants in their summary judgment filings. We agree with the trial court that the determinative question here is whether Mr. and Mrs. Scruggs had a duty to act reasonably, irrespective of the fact that the dangerous condition was obvious or that Mr. Ayrhart was aware of it.

Applying the test set out above, it is clear to us that the danger of a fall could have easily been eliminated by placing a sheet of plywood over the hole, as had been done prior to the day of the accident. Thus, the burden on Mr. and Mrs. Scruggs to engage in conduct that would have prevented the harm to Mr. Ayrhart was minimal. There can also be no doubt that it was foreseeable that a fall through the hole in the floor onto the concrete surface a story below could likely have grave consequences. These factors justify a finding that a duty existed. *Staples*, 15 S.W.3d at 91.

Mr. and Mrs. Scruggs contend, however, that since Mr. Ayrhart was aware of the hole, and since he had been able to work around it, his subsequent fall was not foreseeable. They point out that Mr. Ayrhart is a mature and experienced worker who could be expected to be careful when working around a known hazard, thus rendering such an accident less foreseeable. It is true, of course, that a duty of care is dependent upon foreseeability. *Burroughs*, 118 S.W.3d at 331-32; *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 431 (Tenn. 1994). However, "the degree of foreseeability needed to establish a duty of care decreases in proportion to the magnitude of the foreseeable harm." *Pittman*, 890 S.W.2d at 433.

Despite the factors cited by Mr. and Mrs. Scruggs, we cannot conclude that a fall with serious injury was not foreseeable. Even where a danger is known or obvious, the premises owner may have a duty to use reasonable care, because he or she should anticipate the harm in view of factors such as those discussed in comment (f) to § 343A of the Restatement (Second) of Torts. The facts presented herein do not remove the accident that occurred from the realm of foreseeability and, thus, do not immunize the defendants against a duty to use reasonable care to protect the plaintiff from unreasonable risk of harm.

We conclude that the risk to which Mr. Ayrhart was exposed was unreasonable because the foreseeable probability and gravity of harm posed by the open hole in the floor where the parties were working outweighed the burden on Mr. and Mrs. Scruggs to take action to prevent the harm. Consequently, the unreasonable risk gave rise to a duty to act with due care. *Coln*, 966 S.W.2d at

---

[3]Thus, the trial court impliedly accepted the Scruggses' argument that they had no duty to warn Mr. Ayrhart about the large opening in the floor. We agree there was no duty to warn.

37.  We affirm the trial court's denial of the defendants' motion for summary judgment on the issue of duty of care.

## B. THE QUESTION OF CAUSATION

As set out earlier, another essential element of a negligence claim is that the defendant's negligence must be shown to be a cause in fact of the plaintiff's injury.  Unlike the issue of duty, causation is a question of fact, generally determined by the jury.  Nonetheless, summary judgment may be granted on the issue of causation if the uncontroverted evidence and inferences therefrom permit reasonable minds to reach only one conclusion.  *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998); *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991); *Rains*, 124 S.W.3d at 588.  Mr. and Mrs. Scruggs argue that the facts alleged by Mr. Ayrhart are insufficient to establish that any breach of a duty of care by  them can be considered the cause of Mr. Ayrhart's injury.[4]

It appears to us, however, that the defendant's argument fails in three respects.  First, it overlooks the presumption that Mr. Ayrhart exercised due care, a presumption that is accorded to accident victims whose injuries have  rendered them unable to remember and testify as to events surrounding the accident that caused those injuries.  The general rule is that "where the loss of memory, or other incapacity rendering the survivor of an accident incapable of testifying as to the accident, is shown to be attributable to the accident, it will be presumed that the survivor exercised due care." 88 A.L.R.3d 625 (1978).

As accident and amnesia cases from many jurisdictions make clear, the trier of fact is entitled to rely upon reasonable inferences from known facts, in combination with the presumption of due care, in order to reach its conclusion.  This entitlement is not retracted simply because the plaintiff is unable to establish the exact sequence of events that immediately preceded the accident.  *See*, *e.g.*, *Bettencourt v. Pride Well Services Inc.,* 735 P.2d 722 (Wyo.  1987); *Knickerbocker v. Samson,* 111 N.W.2d 113, 117 (Mich. 1961); *Gravois v. Succession of Trauth,* 498 So.2d 140 (La. App. 1986).  Thus, unless the presumption is rebutted by evidence that he or she did not exercise due care, the plaintiff is entitled to whatever evidentiary weight it carries.

Tennessee courts have adopted the general rule and applied it to afford an amnesiac accident victim the presumption that he or she acted with due care as to events about which the amnesiac has no memory.  *Ammons v. Bonilla*, 886 S.W.2d 239, 245 (Tenn. Ct. App. 1994); *Masters v. Rishton*, 863 S.W.2d 702, 706-77 (Tenn. Ct. App. 1993); *Oder v. Parks*, 34 Tenn. App. 303, 237 S.W.2d 571, 576 (1948); *Biscan v. Brown*, No.  M2001–02766-COA -R3-CV, 2003 WL 22955933, at *34 (Tenn. Ct. App., December 15, 2003) (perm. app. granted May 10, 2004).

---

[4]They note that Tennessee law prohibits the courts from submitting negligence cases to juries which contain only "a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury."  *Psillas v. Home Depot*, 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001).  Since there is no direct evidence as to why Mr. Ayrhart fell through the opening, the defendants contend that the plaintiff is impermissibly asking the trier of fact to speculate as to the cause.  The question before us, however, is not whether a jury was allowed to speculate; rather, it is whether defendants were entitled to summary judgment.

In Tennessee, this presumption, like that applicable to a dead person, is intended to preserve fairness because of one party's inability to tell his or her version of the events. However, the presumption is rebuttable by evidence that the amnesiac did not act with due care. *Jeffreys v. Louisville & N. R.R. Co., Inc.*, 560 S.W.2d 920, 921 (Tenn. Ct. App. 1977).[5] Where there is conflicting evidence as to whether an injured party exercised due care, the question of reasonableness is a question of fact for the jury to resolve, and the plaintiff is entitled to a jury instruction on the presumption. *Biscan*, 2003 WL 22955933, at *34; *Fergus v. Action Cartage & Distribution, Inc.*, No. 60, 1990 WL 43463, at * 4 (Tenn. Ct. App. April 17, 1990) (no Tenn. R. App. P. 11 application filed).

Thus, although the only witness to the fall, Mr. Ayrhart, is unable to provide specific testimony as to how it happened, the presumption that he acted with due care supplies that evidence until it is rebutted. The defendants' claims that Mr. Ayrhart's own carelessness must have caused the fall do not rebut the presumption at summary judgment stage.

The second reason we believe Mr. and Mrs. Scruggs's argument fails is because it wrongly allocates the burdens of proof placed upon the respective parties by a summary judgment motion. A defendant moving for summary judgment must, in its filings supporting the motion, either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Blair v. West Town Mall,* 130 S.W.2d 761, 767 (Tenn. 2004); *Staples*, 105 S.W.3d at 88-89. Only if the moving party presents evidence sufficient to justify grant of the motion if the facts remain uncontested is the nonmoving party required to come forward with some significant probative evidence which makes it necessary to resolve a factual dispute at trial.

The filings supporting the summary judgment motion filed by Mr. and Mrs. Scruggs contained no evidence affirmatively negating the allegation that a dangerous condition on their property was the cause (or a cause) of Mr. Ayrhart's injury. A defendant moving for summary judgment cannot rely solely on omissions in the plaintiff's proof. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (holding that the plaintiff's inability to show whether his food poisoning was caused by defendant's chicken or by food eaten at breakfast did not suffice to affirmatively negate the causation element of his negligence claim). Mere assertions that the non-moving party has produced no evidence do not suffice to entitle the moving party to summary judgment. *Blair*, 130 S.W.3d at 767-68; *Staples*, 15 S.W.3d at 88-89; *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998); *McCarley*, 960 S.W.2d at 588; *Arnett v. Domino's Pizza*, 124 S.W.3d 529, 532 (Tenn. Ct. App. 2003). Since Mr. and Mrs. Scruggs failed to negate the causation element of the Mr. Ayrhart's negligence claim, Mr. Ayrhart was not required to come forward with additional proof in order to avoid dismissal on summary judgment.

---

[5]The presumption cannot be used to create an inference that the defendant acted negligently, nor does it shift the burden of proof to the defendant or authorize the jury to speculate as to the cause of the injuries. *Masters*, 863 S.W.2d at 707. In the case before us, the presumption is simply applied to establish due care on the part of the plaintiff since he cannot remember the details of his fall. The defendants' negligence, if any, must rest on the facts of defendants' conduct.

Third, the facts surrounding the accident and the inferences from those facts are sufficient to establish, for summary judgment purposes, that Mr. Scruggs's conduct in leaving the opening in the floor uncovered was a cause of the fall and the resulting injury. Regardless of the exact circumstances of the fall, it cannot be disputed that it would not have happened if the opening had remained covered. Thus, Mr. Ayrhart's allegations satisfy the test for causation in fact: the "but for" test. "The defendant's conduct is a cause of the event if the event would not have occurred but for the conduct." *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998), quoting *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn. 1997); *see also Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). If the proof shows that Mr. Ayrhart was also negligent, the question becomes one of comparative negligence, discussed below, not negation of an essential element of his claim.

We affirm the trial court's denial of the motion for summary judgment on the issue of causation.[6]

## C. COMPARATIVE NEGLIGENCE

Mr. and Mrs. Scruggs's arguments regarding duty of care and causation relied in large part on the effect on those elements of Mr. Ayrhart's conduct. Because we have determined that Mr. and Mrs. Scruggs owed a duty of care to Mr. Ayrhart and have also determined that Mr. and Mrs. Scruggs have not affirmatively negated the element of cause in fact, Mr. Ayrhart's conduct, and its reasonableness under the circumstances, is relevant to the issue of comparative negligence.[7] *Staples*, 15 S.W.3d at 83, *Coln*, 966 S.W.2d at 42. Where a defendant has pled the affirmative defense of comparative fault, the reasonableness of the plaintiff's conduct in confronting a risk comes into play. Accordingly, the defendants' final argument is that even if their negligence was a factor in Mr. Ayrhart's injuries, they were still entitled to summary judgment because Mr. Ayrhart's own negligence must, as a matter of law, be more than 50% responsible for his injury.

---

[6]Our ruling does not mean that the plaintiff is entitled to prevail at trial, and does not imply that the plaintiff will or will not survive a directed verdict motion at trial. We merely hold that Mr. Ayrhart's failure to give a step-by-step account as to how he fell is not fatal to his claim at this stage of the litigation based on the record before us. It is clear that a court should not grant, or affirm a grant of, summary judgment simply because the court has doubts, even serious doubts, about the plaintiff's ability to prove his or her claim at trial. *Blair*, 130 S.W.3d at 768.

[7]Although the terms are sometimes used interchangeably, the Supreme Court has explained the appropriate usage of "comparative negligence" and "comparative fault."

> The term "comparative negligence" is defined as the measure of the plaintiff's negligence in percentage terms used for the purpose of reducing the plaintiff's recovery from the defendant in proportion to the percentage of negligence attributed to the plaintiff. . . . The term "comparative fault" is defined as those principles which encompass the determination of how to "apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence."

*Owens v. Truckstops of America*, 915 S.W.2d 420, 425 at n.7 (Tenn. 1996) (citations omitted).

Generally, once it is shown that the plaintiff as well as the defendant(s) were negligent, the allocation of fault for the injuries among the negligent parties is a question of fact within the jury's province. The question of how to apportion fault among the parties is ultimately dependent upon the circumstances of the case and one that is left to the jury's common sense and experience when the jury is properly instructed on the relevant factors. *Eaton*, 891 S.W.2d at 593. A number of relevant factors are to be considered in comparing negligent conduct:

> . . . [T]he percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

*Id*. at 592 (footnotes omitted).

This question is generally one left to the factfinder after trial, and as this court said in *LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. (1997), "[c]omparative fault is a question of fact within the jury's province, which should not be lightly invaded by the trial court." However, summary judgment is appropriate on the basis that the plaintiff's negligence was equal to or greater than that of the defendant if, but only if, after considering the evidence in the light most favorable to the plaintiff and affording all favorable inferences to the plaintiff, reasonable minds could not differ as to that conclusion. *Staples*, 15 S.W.3d at 91-92; *Coln*, 966 S.W.2d at 44.

We cannot conclude that reasonable minds would not differ on the relative degree of fault attributable to each party. Consequently, summary judgment on that issue was properly denied.

**V.**

The order of the trial court is affirmed. We remand this case to the Chancery Court of Sumner County for further proceedings. Tax the costs on appeal to the appellants, Dewel and Connie Scruggs.

_____
PATRICIA J. COTTRELL, JUDGE

-11-