IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 19, 2009 Session

## GRACO CHILDREN'S PRODUCTS INC., ET AL. v. SHELTER INSURANCE COMPANY, INC., ET AL.

Direct Appeal from the Circuit Court for Hardin County
No.  3791     Charles Creed McGinley, Judge

No. W2008-01915-COA-R3-CV - Filed June 23, 2009

This is a negligence case. Appellant brought suit against Appellee alleging that Appellee negligently destroyed a piece of evidence.  This evidence was relevant to a separate lawsuit involving Appellant. The trial court granted summary judgment in favor of Appellee finding that Appellee did not owe a duty of care to Appellant.  Finding no error, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Dale Conder, Jr., and Todd D. Siroky, Jackson, Tennessee, Joseph J. Krasovec, III, Chicago, Illinois, for the Appellant, Graco Children's Products.

John S. Little and Andrew V. Sellers, Jackson, Tennessee, for the Appellee, Shelter Mutual Insurance Company.

### OPINION

This appeal involves a negligence action brought by a third party plaintiff.  The underlying action has been settled by the parties and is not at issue on appeal.  For clarification, we will briefly recite the facts and proceedings in the trial court.

On November 27, 2002, Jillian Davis was driving a 1990 Chevrolet Cavalier in Hardin County, Tennessee.  Her son, Waylon Davis, was also in the vehicle sitting in an infant car seat manufactured by Graco Children's Product's Inc. ("Graco").  As Ms. Davis drove through an intersection, her vehicle was struck by a Chevrolet S-10 Blazer driven by James Baker.  Both Ms. Davis and her son suffered severe injuries as a result of the collision.

At the time of the accident, Mr. Baker had automobile insurance provided by Shelter Mutual Insurance Company, Inc. ("Shelter"). On December 2, 2002, Melvin Davis, Jillian's husband and Waylon's father, contacted Victoria Royal, a claim representative for Shelter. Ms. Royal explained that Mr. Baker's insurance policy would provide a maximum of $50,000 for Jillian and Waylon's medical expenses. Although the precise details of the conversation are unclear, Ms. Royal did inform Mr. Davis that $50,000 would not fully cover those expenses. She then advised Mr. Davis to contact an attorney.

On December 16, 2002, Mr. Davis met with Ernest Russell, a claims adjuster for Shelter, to settle the property damage claim for the Davises' vehicle. Shelter had previously determined the vehicle was a total loss. In settling the property claim, Mr. Davis signed a form provided by Shelter with the heading "Permission to Move Vehicles Surrender of Salvage." This form authorized Shelter "to move [the Chevrolet Cavalier] to a place selected by Shelter for storage." Mr. Davis also signed the provision assigning and surrendering all rights of possession and title of the vehicle to Shelter.

On December 19, 2002, Mr. Russell sent an order to Southern Auto Salvage Pool ("Southern") requesting that they pick up and store the vehicle. Southern retrieved the vehicle from Mr. Davis a few days later. On December 27, 2002, Paul Fava, another Shelter employee, reviewed the claim information and approved a salvage order authorizing Southern to dispose of the vehicle. Southern sold the vehicle at auction to Complete Auto Parts on January 8, 2003.

At some point in January 2003, Mr. Davis hired an attorney to pursue any claims arising from the accident. The attorney, Keith Forstman, sent two identical letters to Shelter–the first on January 23, 2003, the second on January 24, 2003– requesting that Shelter preserve the vehicle in order to facilitate his investigation of the accident. On February 20, 2003, a Shelter employee, who was apparently unaware that the vehicle had been sold, informed Mr. Forstman that the vehicle was in storage. Throughout 2003, Shelter repeatedly assured Mr. Forstman that the vehicle was in storage. On October 31, 2003, Shelter finally informed Mr. Forstman that the vehicle had, in fact, been sold and destroyed in January 2003.

The Davises filed a complaint in Hardin County Circuit Court on November 25, 2003. The complaint named Graco, among others, as defendant for its role as manufacturer of the car seat. The claims asserted against Graco and the other defendants were ultimately settled out of court. This appeal only involves a claim asserted by Graco as a third party plaintiff.

Graco's complaint, filed on February 27, 2006, asserted a claim of common law negligence[1] against Shelter. Specifically, Graco alleged that Shelter had a legal duty to preserve the vehicle for use in litigation. This duty was breached, Graco alleged, when the vehicle was destroyed. Shelter answered the complaint and filed a motion for summary judgment. The trial court heard the motion

---

[1]Graco initially asserted a claim for negligent spoilation of evidence against Shelter. This claim was dismissed by the trial court, and Graco has not pursued it on appeal.

on July 8, 2008 and subsequently entered an order granting summary judgment in favor of Shelter. In its order, the trial court found that "there is no duty between Shelter and Graco." Graco appeals.

In its brief, Graco raises two challenges to the trial court's ruling. First, Graco argues that the trial court misapplied the "foreseeability" test in its analysis of legal duty. Second, Graco contends that the trial court should have found that Shelter voluntarily undertook a duty to preserve the vehicle in the course of its interactions with Mr. Davis.

## Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. Tenn. R. Civ. P. 56.04; **Byrd v. Hall**, 847 S.W.2d 208, 210 (Tenn. 1993). Because summary judgment involves questions of law only, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. **Teter v. Republic Parking Sys., Inc.**, 181 S.W.3d 330, 337 (Tenn. 2005); **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997).

## Law and Analysis

The issue presented in this case involves the first element of a negligence claim: the duty of care. Whether a defendant owes a plaintiff a duty of care is a question of law to be decided by the court. **West v. E. Tenn. Pioneer Oil Co.**, 172 S.W.3d 545, 550 (Tenn. 2005).

All persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others. **Burroughs v. Magee**, 118 S.W.3d 323, 329 (Tenn. 2005). This duty is defined as "the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." **Id**.; **Staples v. CBL & Assocs., Inc.**, 15 S.W.3d 83, 89 (Tenn. 2000). To determine if a particular risk is unreasonable, courts consider whether "the foreseeable probability and gravity of the harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995). In **McCall**, the Court listed several factors to be considered in determining whether a particular risk was unreasonable:

> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

**Id**. (citing Restatement (Second) of Torts, §§ 292, 293 (1964)). With these factors in mind, we turn to the facts in the present case.

Graco contends that it was foreseeable to Shelter that disposing of the vehicle would cause harm to others. The harm in this case was depriving potential litigants of a piece of evidence in an action arising from the accident. Graco relies on the deposition testimony of Ms. Royal, who had advised Mr. Davis to consult with an attorney to determine if any claims from the accident were available. Neither Ms. Royal nor any other Shelter employee, however, were aware of any litigation or investigation when the vehicle was destroyed. In fact, Mr. Forstman's letters asking Shelter to preserve the vehicle arrived several weeks after the vehicle was destroyed. Ms. Royal's comments simply do not show it was foreseeable to Shelter that destroying the vehicle would create an unreasonable risk of harm. Finally, accepting Graco's argument would require Shelter to store (at its own expense) damaged vehicles indefinitely in order to prevent any harm to a vast and unknown array of potential litigants.

Next, Graco contends that Shelter undertook an affirmative duty to store and the preserve the vehicle through its agreement with Mr. Davis. Graco relies on the following provision of the form signed by Mr. Davis:

### PERMISSION TO MOVE VEHICLE

I/We do hereby authorize and permit Shelter Insurance Companies to move the above described vehicle to a place selected by Shelter for storage.

Graco contends that this created an obligation for Shelter to place the vehicle in storage. In response, Shelter points to the second provision on the form signed by Mr. Davis:

### SURRENDER OF SALVAGE AND TITLE

I/We hereby assign and surrender all of my/our rights of possession and title to my/our above described motor vehicle together with all its parts and equipment to Shelter Insurance Companies.

Shelter also notes that Mr. Davis testified in his deposition that he was aware when signing the form that Shelter would destroy the vehicle. Considering this testimony, we cannot find that Shelter agreed to store the vehicle indefinitely when the only other party to the agreement denies it.

For these reasons, we find that Shelter did not owe a duty, or affirmatively undertake a duty, to preserve the vehicle as evidence. Accordingly, the order of the trial court granting summary judgment in favor of Shelter is affirmed. Costs of this appeal are assessed to Appellant, Graco Children's Products, Inc. and its surety.

_____

J. STEVEN STAFFORD, J.
